# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:07cv95

| | |
|---|---|
| HENDERSON OIL COMPANY, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| Vs. | ) ORDER<br>) |
| RON L. COWART, | )<br>)<br>) |
| Defendant. | )<br>) |

**THIS MATTER** is before the court on defendant's Motion for Summary Judgment (#16) and defendant's Supplement to Motion for Summary Judgment (#17). Also before the court are defendant's memoranda in support and in reply, and plaintiff's brief in opposition. On January 4, 2008, the report of the mediator was filed with this court, making defendant's motion ripe for disposition. Having considered defendant's motion and reviewed the pleadings, the court enters the following Order denying the Motion for Summary Judgment and setting this matter on for jury trial beginning at 9:30 a.m. on Monday, March 10, 2008, in Bryson City.

## FINDINGS AND CONCLUSIONS

**I.     Nature of the Case**

In this action, plaintiff contends that defendant breached a contract through non-payment of goods, gasoline, which plaintiff contends defendant ordered for his now defunct convenience stores. Defendant contends that he is not personally liable for any of the unpaid-for-goods inasmuch as he did not contract for such goods in his

personal capacity, but in his capacity as a corporate officer and later as the sole member of a limited liability corporation. For the reasons discussed below, the court will deny defendant's Motion for summary judgment inasmuch as determination of whether a person acted as an corporate agent or principal when he entered into a contract is a question reserved for the jury. Howell v. Smith, 261 N.C. 256, 260 (1964). While plaintiff notes that summary judgment could be granted in its favor even though it did not so move, the court believes that the well settled case law of North Carolina applies equally to plaintiff. Id.

## II.  Factual Background

The following facts appear undisputed from the pleadings and exhibits attached thereto. Such factual resolution is not intended to be binding, and is not intended to be read to the jury.

Plaintiff is in the business of selling of gasoline to convenience stores and other businesses. In late 2004, plaintiff contracted to buy a book of business from Ronco Fuel Company, Inc., (hereinafter "Ronco") a company owned by defendant. Two of the convenience store accounts plaintiff purchased were known as "Mountain Outdoor" convenience store located near Bryson City and the "Mountain View" convenience store near Franklin. Ronco leased Mountain Outdoor and owned Mountain View, with the latter being operated by Mark Mullett.

It would appear from the pleadings that during the relevant period, plaintiff desired to sell gasoline to defendant under an exclusive contract while defendant, or his company, resisted signing an exclusive contract. Unable to reach agreement,

during 2005 and 2006 defendant or his company would place an order for fuel by faxing an order to plaintiff. The fax would either show "Mountain View" or "Mountain Outdoor" as the location placing the order and seeking delivery. Review of the pleadings revealed that none of these faxes designated any principal, only the trade name of the store that was seeking a delivery. Some of the faxes would be signed by "Ron Cowart" or "Ron," and one in particular provided as follows in hand writing: "Barry Edwards, Please call me, Ron Cowart, 524-2014, Thanks." Edwards Affidavit, Docket Entry 18-3, at 16. Most of the faxes, however, contained neither a signature nor any designation as to who had sent the fax other than the store.

After receipt of such an order, plaintiff would deliver fuel to the location. The completion of a transaction in this manner would soon be followed by another nearly identical transaction. The order would be shipped, and another invoice would be generated. During such two year period, plaintiff would send invoices for each transaction directly to "Ron Cowart." Id., at 12.

In late July 2005, Mark Mullett, who had been operating Mountain View under a lease from Ronco Fuel and who had entered such a supply contract with plaintiff, notified plaintiff that he was terminating the supply contract. At the same time, defendant informed plaintiff by letter that Ronco Investments, LLC - - a company different than Ronco Fuel - - would begin operating Mountain View beginning in August 2005 and requested that fuel be provided on a load-to-load basis. Defendant signed this letter as "managing member" of Ronco Investments, LLC. Docket Entry 18-5, at 2. Ronco Fuel was dissolved early the next year.

Under a "load-to-load" arrangement, a buyer has no obligation to buy from an oil jobber, which in turn has no obligation to sell to a store. Only when an order is placed and accepted do any obligations arise. In response to such letter, plaintiff sent its own letter, objecting and indicating that it expected Ronco Investments, LLC, to abide by the terms of the supply contract, which plaintiff contends that it acquired when it bought the book of business in 2004. It was plaintiff's contention in such letter that regardless of the name change, it had the exclusive right to supply both locations owned by defendant. In concluding such responsive letter, plaintiff asked defendant to sign a confirming addendum. Docket Entry 18-6, at 2. Defendant refused. Docket Entry 18-3, at 14.

During this exchange in the summer of 2005, at least one load-by-load order was placed, again by a fax, which was placed between August 2 and 4.. Docket Entry 18-7, at 2. On August 30, 2005, plaintiff forwarded new contracts for both locations to defendant, which defendant refused to sign. On September 19, 2005, defendant emailed that there were no written supply agreements or contracts in place. Docket Entry 18-8, at 2. Unlike defendant's use of the term "managing member" in his the letter informing plaintiff of the stores' change in ownership, these exchanges by email only indicated that they were from "Ron Cowart."

Despite failure to reach agreement as to a supply contract, the stores continued to order fuel and plaintiff continued to supply fuel. Again, none of the faxes revealed who was actually sending the faxes or disclose any principal or agency relationship. Like before, the orders were filled and the invoices were sent directed to defendant

personally. Such pattern or practice continued through March 2006. On March 31, 2006, defendant sent an email to plaintiff that stated:

> The present arrangement seems to be working pretty good. Please email a contract for the supply of the two stores. I will consider a annual renewable contract. I also want to incorporate a provision allowing for a loan of $15,000 to be repaid at one cent a gallon.

Docket Entry 18-3, at 20. Such email was sent by "Ron L. Cowart" and contained no designation that he was acting in his capacity as "managing member" of the LLC. Id.

It is at this point in the relationship that invoices went unpaid and the store accounts were in arrears. It is undisputed that in early 2006, defendant applied to be admitted to law school in Lansing, Michigan, and that he was accepted in April of that year. Cowart Deposition, at 62. As of April 30, 2006, the total account balances for both stores was $102,737.31. Thereafter, defendant moved to Lansing to begin the first semester in the fall of 2006. By October 31, 2006, the unpaid account balance for both locations was $177,532.96. With the account balances increasing and not being paid, plaintiff thereinafter declined to sell fuel and cut off the accounts.

As to the solvency of the LLC, the evidence presented indicates that it was formed in 2005 with defendant being its sole member and manager and with an initial capital contribution of $60,000.00. In 2005, the LLC had lost over $92,000.00, and was, according to its balance sheet, insolvent. In 2006, this insolvency grew month by month and at the end of the year the LLC had lost another $180,000.00. See Ronco Investments LLC 2005 & 2006 tax returns.

**III. Issue Presented in Defendant's Motion for Summary Judgment**

Defendant seeks entry of judgment in his favor under Rule 56, Federal Rules

of Civil Procedure, arguing that there is no genuine issue of material fact as to whether he entered into a contract for the supply of gasoline with the plaintiff, inasmuch as "[a]ll of the evidence shows that the only entity with which plaintiff has such a contract was Ronco Investments, LLC." Docket Entry 16, at 1.

**IV.     Summary Judgment Standard**

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the

evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). The court has done this in Section III, supra.

Affidavits filed in support of a defendant's Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in its favor. Anderson, supra, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id., at 252.

## V. Discussion

When plaintiff's evidence is viewed as required by Rule 56, it is clear to this court that a genuine issue of material fact remains as to defendant's capacity when he placed orders with plaintiff. In making such a determination in the contact of commercial sales, courts in North Carolina look to the Uniform Commercial Code. Section 25-1-205 provides in relevant part:

> A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

The official commentary to that section provides:

> 'Course of dealing' may enter the agreement either by explicit provisions of the agreement or by tacit recognition.

Equally, Section 25-2-208 provides:

> Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and the opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement.

In this case, plaintiff has presented a great deal of evidence as to the course of dealing between these parties as well as evidence that plaintiff sent bills directly to defendant, which were in turn paid without protest.

The final Uniform Commercial Code Section applicable to this case is found in Section 25-2-301, which provides that "the obligation . . . of the buyer is to accept and pay in accordance with the contract." In turn, Section 25-2-103(1)(A) defines "buyer" to mean a person who buys or contracts to buy goods. The evidence of record clearly shows that defendant admitted that he or persons under his supervision and control prepared the orders. Cowart Deposition, at 13-14. Equally, there is no evidence of record that defendant ever objected to invoices plaintiff directed to him personally. Thus, there is evidence of record upon which a jury could find defendant to be the "buyer" under both the course of dealing and the course of performance provisions of the UCC.

While defendant disclosed the existence of the LLC to plaintiff in July 2005, he continued to place orders in a manner that either indicated he was placing the orders or that the convenience stores were placing the orders through 2006. While insisting on a load-by-load relationship, there is no evidence thus far produced that defendant indicated in each of those orders or contracts that he was placing the orders on behalf of the LLC. In North Carolina, an agent who makes a contract - - and the court considers a load-by-load order to be an individual contract with an oil jobber - - for an undisclosed principal can be personally liable for the debt. In Howell v. Smith, supra, a case involving various ambiguous disclosures, the North Carolina Supreme Court upheld a jury verdict against an agent personally stating:

> An agent who makes a contract for an undisclosed principal is personally liable as a party to it unless the other party had actual knowledge of the agency and the principal's identity… The disclosure of the agency is not complete so as to relieve the agent of personal liability unless it embraces the name of the principal. The duty is on the agent to make this disclosure, and not upon the third person with whom he is dealing to discover it.

Id., at 258-59. Whether the agent or the principal was the contracting party is a question for the jury. Id., at 260.

Finally, it would appear that defendant is asking this court to find that he was acting in his capacity as the managing member of the LLC in 2006 when he placed the orders, even though the LLC was insolvent at the time. This cannot be done, inasmuch as the court would also have to find that defendant breached his fiduciary duty to his creditors - - mainly plaintiff - - by placing orders for which he knew the LLC could not pay. Snyder v. Freeman, 300 N.C. 204 (1980); Whitley v. Carolina

Clinic, Inc., 118 N.C. App.523 (1995); and Lumber Co., Inc. v. Perry, 149 N.C. App. 19, *review denied*, 356 N.C. 164 (2002). The burden would then shift to defendant to prove to this court that all of his actions on behalf of the insolvent LLC were fair, open, and honest. Estate of Smith v. Underwood, 127 N.C.App. 1 (1997).

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendant's Motion for Summary Judgment (#16) and defendant's Supplemental to Motion for Summary Judgment (#17) are **DENIED**, and this matter is set on for trial by jury beginning at 9:30 a.m. on Monday, March 10, 2008, in Bryson City. A Final Pretrial Conference will be conducted in chambers on February 28, 2008, at 10:30 a.m. in Asheville.

The parties are advised that this matter is the first matter on for trial during such term.

Signed: January 14, 2008

Dennis L. Howell
United States Magistrate Judge