# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:07cv95

| | |
|---|---|
| **HENDERSON OIL COMPANY, INC.,** | )<br>) |
| **Plaintiff,** | )<br>) |
| Vs. | )     **ORDER**<br>) |
| **RON L. COWART,** | )<br>) |
| **Defendant.** | )<br>) |
| _____ | ) |

**THIS MATTER** is before the court on plaintiff's Motion for Issuance of Writ of Execution (#60)[1] and Renewed Motion for Third Party Order (#65). Also before the court is defendant's Motion for Declaration of Exempt Property (#63).

## I. Procedural History

After preliminary review of Motion for Writ of Execution, the court entered an Order on September 16, 2008, setting such matter for hearing on September 25, 2008, and advising defendant as to the manner in which he could respond. See Order (#61).

On September 23, 2008, defendant filed his Objection to Issuance of Writ of Execution and Plaintiff's Motion for Third Party Order (#62). In support of his response, defendant filed as an exhibit to a pleading entitled "Affidavit of Ron L. Cowart of Residency," id., at 9, what appears to be a copy of an eviction notice originating in Michigan, id., at 11, a copy of a duplicate North Carolina drivers license that was issued August 19, 2008, id., at 12, a photocopy of what appears to be a house

---

[1] Plaintiff's motion for a writ was contained within a pleading styled Motion for Third Party Order (#60).

-1-

key, id., at 13, and an unverified and unfiled copy of a report of a mediator in a North Carolina state proceeding. Id., at 15. In such objection, defendant argues and then avers in his affidavit that he is now and has been a resident of the State of North Carolina . In pertinent part, plaintiff avers:

> 3. On April 11, 2008, my apartment lease in Michigan was terminated. *(See Exhibit A)*
> 4. Within 30 days thereafter I secured a residency at 230 Hayfield Drive, Canton, North Carolina, 28716.
> 5. I am a North Carolina licensed driver. Offered in support is a copy of my North Carolina Drivers license No. 435768. *(See Exhibit B)*

Objection (#62, at 9, ¶¶ 3-5). While not mentioned in his Objection, defendant states in his affidavit that he would be unable to attend the September 25, 2008, hearing, but asks that the court consider his objections and motions. Defendant did not seek permission to be absent from the hearing or move to continue the hearing to a later date.

On September 25, 2008, the court conducted the previously noticed hearing. At such hearing the court considered defendant's submissions as well as the submissions in reply submitted by plaintiff. Defendant did not appear and did not have permission not to appear; however, the court fully considered defendant's evidence as to his residence as well as the evidence presented by plaintiff.

## II. Protection of Judgment Debtors in North Carolina

### A. Exemptions Generally

Where a judgment creditor seeks to enforce a federal judgment against a debtor, the procedure the court employs must "accord with the procedure of the state where the court is located . . . ." Fed.R.Civ.P. 69(a). North Carolina procedure, in turn, provides

that a <u>resident</u> judgment debtor may elect between a laundry list of statutory exemptions or take the exemption guaranteed by the North Carolina Constitution. Non-resident judgment debtors do not enjoy such protections. The statutory exemptions are:

> **§ 1C-1601. What property exempt; waiver; exceptions.**
>
> (a) Exempt property. – Each individual, resident of this State, who is a debtor is entitled to retain free of the enforcement of the claims of creditors:
>   (1) The debtor's aggregate interest, not to exceed ten thousand dollars ($10,000) in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.
>   (2) The debtor's aggregate interest in any property, not to exceed three thousand five hundred dollars ($3,500) in value less any amount of the exemption used under subdivision (1).
>   (3) The debtor's interest, not to exceed one thousand five hundred dollars ($1,500) in value, in one motor vehicle.
>   (4) The debtor's aggregate interest, not to exceed three thousand five hundred dollars ($3,500) in value for the debtor plus seven hundred fifty dollars ($750.00) for each dependent of the debtor, not to exceed three thousand dollars ($3,000) total for dependents, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments, that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.
>   (5) The debtor's aggregate interest, not to exceed seven hundred fifty dollars ($750.00) in value, in any implements, professional books, or tools of the trade of the debtor or the trade of a dependent of the debtor.
>   (6) Life insurance as provided in Article X, Section 5 of the Constitution of North Carolina.
>   (7) Professionally prescribed health aids for the debtor or a dependent of the debtor.
>   (8) Compensation for personal injury or compensation for the death of a person upon whom the debtor was dependent for

> support, but such compensation is not exempt from claims for funeral, legal, medical, dental, hospital, and health care charges related to the accident or injury giving rise to the compensation.
> (9) Individual retirement plans as defined in the Internal Revenue Code and any plan treated in the same manner as an individual retirement plan under the Internal Revenue Code. For purposes of this subdivision, "Internal Revenue Code" means Code as defined in G.S. 105-228.90.

\* \* \*

N.C.Gen.Stat. § 1C-1601. The North Carolina Constitutional exemptions - - which are also only available to <u>resident</u> judgment debtors - - are set forth as follows:

> **§ 1C-1602. Alternative exemptions.**
> The debtor may elect to take the personal property and homestead exemptions provided in Article X of the Constitution of North Carolina instead of the exemptions provided by G.S. 1C-1601. If the debtor elects to take his constitutional exemptions, the exemptions provided in G.S. 1C-1601 shall not apply and in that event the exemptions provided in this Article shall not be construed so as to affect the personal property and homestead exemptions granted by Article X of the Constitution of North Carolina. If the debtor elects to take his constitutional exemptions, the clerk or district court judge must designate the property to be exempt under the procedure set out in G.S. 1C-1603. The debtor is entitled to have one thousand dollars ($1,000) in value in real property owned and occupied by him and five hundred dollars ($500.00) in value in his personal property exempted from sale under execution. If the value of the property in which the debtor claims his constitutional exemption is in excess of his exemptions, the clerk, in an execution, may order the sale of the property with the proceeds of the sale being distributed first to the debtor to satisfy his exemption and the excess to be distributed as ordered. (1981, c. 490, s. 1; 1981 (Reg. Sess., 1982), c. 1224, s. 8.)

**B.  Process Employed**

According to North Carolina law, prior to a creditor being able to obtain a writ of execution from the court, the creditor must serve a <u>resident</u> judgment debtor with

a "Notice of Right to Have Exemptions Designated" ("AOC-CV-406"), which is a form created by the North Carolina Administrative Office of the Courts in compliance with Chapter 1C-1603 of the North Carolina General Statutes.

Where, however, a person is not a <u>resident</u> judgment debtor, he has no right to have exemptions designated and the judgment creditor has no obligation to serve such a non-resident debtor with any notice. The judgment creditor is not, however, entitled to an automatic issuance of a writ of execution against the non-resident debtor. In <u>First Union National Bank v. Rolfe</u>, 90 N.C.App. 85 (1988), the appellate court made it clear that a trial court, before issuing the writ, must conduct a "residency hearing" to determine whether defendant now resides in the State of North Carolina. Such a proceeding was, in accordance with <u>First Union</u>, noticed on September 16, 2008, for hearing on September 25, 2008.

### III. Discussion

Plaintiff states in its motion that defendant is a non-resident of North Carolina, which is now supported by affidavits and other evidentiary material; likewise, defendant has submitted his own materials, in which he claims to now be a resident of the State of North Carolina. In his affidavit, defendant avers that he establish his residence in the State of North Carolina 30 days from the termination of his lease in Michigan, which occurred on April 11, 2008, which the court determines to be May 11, 2008.

In stark contrast to defendant's affidavit, in which he claims he established residence in North Carolina as of May 11, 2008, are the previous affidavits he recently

filed in a North Carolina state court proceeding. On July 15, 2008, defendant filed an affidavit in the North Carolina General Court of Justice, Superior Court Division, Haywood County, in which he averred in pertinent part as follows:

> 1. My name is RON L. COWART, and I am currently a resident of Clinton County, State of Michigan.

Stark Aff., Ex. 2, Docket Entry #66-3, at 1, ¶ 1. Defendant submitted another affidavit to the same tribunal on August 4, 2008, in which he averred in pertinent part as follows:

> 1. My name is RON L. COWART, and I am currently a resident of Clinton County, State of Michigan.

Stark Aff., Ex. 3, Docket Entry #66-4, at 1, ¶ 1. The court has also consider the copy of the North Carolina Drivers License submitted by defendant, as well as the official report from the North Carolina Department of Motor Vehicles. While it appears true that defendant obtained a duplicate North Carolina Drivers License on August 19, 2008, the official record[2] shows that, as of September 24, 2008, the day before the hearing, defendant also holds a drivers license issued by the State of Michigan. Rosehart Aff., Docket Entry #64, at 4 . The court further notes that it was defendant that removed this action to this court invoking the court's diversity jurisdiction upon a claim of residency in the State of Michigan, that such residency in the State of Michigan was necessitated by enrollment in law school in Lansing, Michigan, that

---

[2] The court finds that the *Court Search* (c) research product proffered is a reliable source, wholly drawn from original records maintained by public agencies, and that such report is, therefore, admissible under a modern reading of Rule 803(8), Federal Rules of Evidence.

defendant remains a student at such institution, and that all the affidavits of defendant now before the court have the seal of a Notary of the State of Michigan.

The issue before the court is whether on September 25, 2008, defendant debtor is resident or a non-resident of the State of North Carolina.  Having carefully considered all the evidence, it appears that defendant remains a resident of the State of Michigan. First, defendant is judicially estopped from claiming before this court that he has been a resident of the State of North Carolina since May 11, 2008.  In two affidavits filed with the North Carolina General Court of Justice since May 11, 2008, defendant has sworn that he is a resident of the State of Michigan.

In King v. Herbert J. Thomas Mem. Hosp., 159 F.3d 192 (4th Cir. 1998), the Court of Appeals for the Fourth Circuit court held, as follows:

> [j]udicial estoppel, an equitable doctrine that prevents a party who has successfully taken a position in one proceeding from taking the opposite position in a subsequent proceeding, is recognized to protect the integrity of the judicial system.  Acting on the assumption that there is only one truth about a given set of circumstances, the courts apply judicial estoppel to prevent a party from benefitting itself by maintaining mutually inconsistent positions regarding a particular situation. As we have previously observed, the doctrine is invoked to prevent a party from "playing fast and loose with the courts," from "blowing hot and cold as the occasion demands," or from attempting "to mislead the [courts] to gain unfair advantage." As an equitable doctrine, judicial estoppel is invoked in the discretion of the district court and with the recognition that each application must be decided upon its own specific facts and circumstances.

Id., at 196 (citations omitted).  Because the law assumes "that there is only one truth about a given set of circumstances," id., the Court of Appeals for the Fourth Circuit has adopted the doctrines of judicial estoppel and quasi estoppel to prevent litigants from benefitting from inconsistent factual positions, which not only make a mockery

out of the courts, but would put in jeopardy the full faith and credit afforded to earlier decisions.

The Court of Appeals for the Fourth Circuit in National Union Fire Ins. Co. of Pittsburgh, Inc. v. Manufacturers and Traders Trust Co., 137 Fed. Appx. 529 (4th Cir. 2005), recited the elements of judicial estoppel:

> The doctrine of judicial estoppel has three necessary elements:
> (1) The party to be estopped must be asserting a position that is factually incompatible with a position taken in a prior judicial or administrative proceeding; (2) the prior inconsistent position must have been accepted by the tribunal; and (3) the party to be estopped must have taken inconsistent positions intentionally for the purpose of gaining unfair advantage.
> But "judicial estoppel will not be applied where the party's inconsistent positions resulted from inadvertence or mistake."

Id., 2005 WL, at 2 (citing King, supra). The Court of Appeals for the Second Circuit has further elaborated on the doctrine:

> First, the doctrine seeks to preserve the sanctity of the oath by demanding absolute truth and consistency in all sworn positions. Preserving the sanctity of the oath prevents the perpetuation of untruths which damage public confidence in the integrity of the judicial system. Second, the doctrine seeks to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings.

Bates v. Long Island R.R. Co., 997 F. Supp. 1028, 1038 (2d Cir. 1993). "The [judicial estoppel] doctrine is invoked to prevent a party from 'playing fast and loose with the courts,' from 'blowing hot and cold as the occasion demands,' or from attempting 'to mislead the courts to gain an unfair advantage.'" King, supra, at 196.

The appellate court's description in King is precisely what defendant is

attempting to accomplish in this case. Plaintiff is judicially estopped from asserting in this action that he has been a resident of the State of North Carolina since may 11, 2008, inasmuch as he has made sworn statements on two occasions in state proceedings which are inapposite to such claim. Further, the additional evidence submitted by plaintiff informs the court's determination that defendant remains a resident of the State of Michigan, and cannot, therefore, claim North Carolina's statutory or constitutional exemptions. The writ of execution has, therefore, issued in accordance with <u>First Union</u>.

The writ having now issued, the defendant's Motion for Declaration of Exempt Property will be denied as defendant lacks standing to assert any exemptions and plaintiff's Renewed Motion for Third Party Order will be allowed and Smoky Mountain Development as well as certain officers of such corporation will be required to appear and answer, as provided <u>infra</u>.

\* \* \*

Finally, defendant is cautioned that submission of false affidavits to a federal court could subject him not only to sanctions under Rule 11 and contempt, but is punishable as a federal offense. Defendant is further cautioned that as an aspiring member of the Bar, his reputation for honesty is a valuable asset that can be lost when false affidavits are submitted to a tribunal. Defendant may wish to consider more carefully in the future the sworn representations he makes to any court as such may have future consequences and repercussions beyond the immediate issue then before the court.

# ORDER

**IT IS, THEREFORE, ORDERED** that

(1)     plaintiff's Motion for Issuance of Writ of Execution (#60) is **ALLOWED**, and the writ has been issued;

(2)     plaintiff's Renewed Motion for Third Party Order (#65) is **ALLOWED**;

(3)     defendant's Motion for Declaration of Exempt Property (#63) is **DENIED;** and

**IT IS FURTHER ORDERED** that

(1)     in accordance with Chapter 1-360 of the North Carolina General Statutes that Smoky Mountain Development Corporation, its president William Ragland and another corporate officer with knowledge of the settlement reached in <u>Smoky Mountain Development Corporation v. Ronco investments, LLC and Ron Cowart</u>, No. 07-CVS-743, **ANSWER** this Order and personally **APPEAR** on October 29, 2008, at 2 p.m. in the United States Courthouse in Bryson City, North Carolina, concerning the alleged debt owing by Smoky Mountain Development Corporation in connection with the above referenced State Court Action;

(2)     Smoky Mountain Development Corporation is hereby **ORDERED** pursuant to Chapter 1-358 to escrow, hold in trust, and otherwise not dispose of any funds that may be due in relation to these matters pending further order of the Court; and

(3) having considered the applicable factors, and determining that good reason exists to file such document under seal, L.Cv.R. 6.1, in advance of such hearing, Smoky Mountain Development Corporation shall file with the court **UNDER SEAL** for ***IN CAMERA* REVIEW** the settlement agreement <u>Smoky Mountain Development Corporation v. Ronco investments, LLC and Ron Cowart</u>, No. 07-CVS-743 not later than October 21, 2008.

(4) Counsel for Plaintiff is **ORDERED** to have a copy of this **ORDER** served upon Mr. Ragland by personal service being made upon him as soon as possible after filing thereof.

Signed: September 28, 2008

*[signature]*

Dennis L. Howell
United States Magistrate Judge